GLEN B. McCORMICK
Acting United States Attorney
District of Arizona
CRAIG H. RUSSELL
Assistant U.S. Attorney
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: craig.russell@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States America,<br><br>Plaintiff,<br><br>vs.<br><br>Shateria Morse,<br><br>Defendant. | CR No. 20-00254-TUC-JGZ(BGM)<br><br>PLEA AGREEMENT |
|---|---|

The United States of America and the defendant agree to the following disposition of this matter:

PLEA

1.      The defendant agrees to plead guilty to Count One of the Indictment, which charges the defendant with Conspiracy to Acquire a Controlled Substance by Fraud, Forgery, Deception, or Subterfuge in violation of Title 21, United States Code, Sections 843(a)(3) and 846.

Elements of the Offense

2.      The elements of the offense are as follows:

a. The defendant agreed with at least one other person to commit the offense of obtaining codeine, a Schedule V controlled substance, by misrepresentation, fraud, forgery, deception, or subterfuge; and

b. The defendant became a member of the conspiracy knowing its object and intending to accomplish it.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Maximum Penalties</u>

3.      The defendant understands that the maximum penalties for the offense to which he/she is pleading are a fine of $250,000.00, a term of imprisonment of four years, and a term of one year of supervised release.

4.      The defendant agrees to pay a fine unless the defendant establishes the applicability of the exceptions contained in § 5E1.2(e) of the Sentencing Guidelines.

5.      Pursuant to 18 U.S.C. § 3013, the defendant shall pay a special assessment of $100.00 per felony count.  The special assessment is due and payable at the time the defendant enters the plea of guilty, and shall be paid no later than the time of sentencing unless the defendant is indigent.  If the defendant is indigent, the special assessment will be collected according to the provisions of Chapters 227 and 229 of Title 18, United States Code.

<u>Drug Conviction & Immigration Consequences</u>

6.      The defendant understands and acknowledges that pleading guilty may result in the termination or denial of certain food stamp, social security, and other benefits for defendant and the defendant's immediate family pursuant to 21 U.S.C. §§ 862 and 862a.

7.      The defendant recognizes that pleading guilty may have consequences with respect to his/her immigration status if the defendant is a recently naturalized United States citizen or is not a citizen of the United States.  Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Although there may be exceptions, the defendant understands that the defendant's guilty plea and conviction for this offense make it practically inevitable and a virtual certainty that the defendant will be removed or deported from the United States.  The defendant agrees that he/she has discussed this eventuality with his/her attorney.  The defendant nevertheless affirms that he/she wants to plead guilty regardless of any immigration

consequences that this plea entails, even if the consequence is the defendant's automatic removal from the United States.

STIPULATIONS, TERMS AND AGREEMENTS

Agreements Regarding Sentencing

8.      Guideline Calculations: Although the parties understand that the Guidelines are only advisory and just one of the factors the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, pursuant to Rule 11(c)(1)(C), Fed. R. Crim. P., the parties stipulate and agree that the following guideline calculations are appropriate for the charge for which the defendant is pleading guilty should the Court find that the defendant was an average participant in the offense:

| | | |
|---|---|---|
| Base Offense Level | 2D2.2 | 8 |
| Manager or Supervisor | 3B1.1(b) | +3 |
| Acceptance of Responsibility | 3E1.1(a) | -2 |
| Total Adjusted Offense Level: | | 9 |

9.      Sentencing Agreement:  Pursuant to Fed. R. Crim. P., Rule 11(c)(1)(C), the government and the defendant stipulate and agree that the following are the applicable guideline ranges for the offense:

4 to 10 months imprisonment if defendant's Criminal History Category is I;

6 to 12 months imprisonment if defendant's Criminal History Category is II;

8 to 14 months imprisonment if defendant's Criminal History Category is III;

12 to 18 months imprisonment if defendant's Criminal History Category is IV;

18 to 24 months imprisonment if defendant's Criminal History Category is V;

21 to 27 months imprisonment if defendant's Criminal History Category is VI.

a.      The defendant may withdraw from the plea agreement if he/she receives a sentence in excess of 27 months imprisonment.

b.      The defendant may not move for any adjustments in Chapters Two, Three or Four of the Sentencing Guidelines or any "departures" from the Sentencing Guidelines.

c.      The defendant may argue for a variance under 18 U.S.C. § 3553(a) in support of a sentence request below the stipulated range in this agreement, and the government may oppose the requested variance. The government, however, will not withdraw from the agreement if the defendant argues for, and the Court grants, a variance below the stipulated range in this agreement.

10.     The defendant understands that if the defendant violates any of the conditions of the defendant's supervised release, the supervised release may be revoked.  Upon such revocation, notwithstanding any other provision of this agreement, the defendant may be required to serve a term of imprisonment or the defendant's sentence may otherwise be altered.

11.     The defendant and the government agree that this agreement does not in any manner restrict the actions of the government in any other district or bind any other United States Attorney's Office.

12.     The defendant understands and agrees to cooperate fully with the United States Probation Office in providing (a) all criminal history information, i.e., all criminal convictions as defined under the Sentencing Guidelines; (b) all financial information, i.e., present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution; (c) all history of drug abuse which would warrant a treatment condition as part of sentencing; and (d) all history of mental illness or conditions which would warrant a treatment condition as part of sentencing.

13.     If the Court, after reviewing this plea agreement, concludes any provision is inappropriate, it may reject the plea agreement pursuant to Rule 11(c)(5), Fed. R. Crim. P., giving the defendant, in accordance with Rule 11(d)(2)(A), Fed. R. Crim. P., an opportunity to withdraw defendant's guilty plea.

Forfeiture

14.     Nothing in this plea agreement shall be construed to protect the defendant from civil forfeiture proceedings or prohibit the United States from proceeding with and/or

initiating an action for civil forfeiture.  Further, this agreement does not preclude the United States from instituting any civil proceedings as may be appropriate now or in the future.

Waiver of Defenses and Appeal Rights

15.     Provided the defendant receives a sentence in accordance with this plea agreement, the defendant waives (l) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentencing-including the manner in which the sentence is determined, the determination whether defendant qualifies for "safety valve" (U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f)), and any sentencing guideline determinations.  The sentence is in accordance with this agreement if the sentence imposed does not exceed 18 months imprisonment.  The defendant further waives: (1) any right to appeal the Court's entry of judgment against defendant; (2) any right to appeal the imposition of sentence upon defendant under Title 18, United States Code, Section 3742 (sentence appeals); (3) any right to appeal the district court's refusal to grant a requested variance; (4) any right to collaterally attack defendant's conviction and sentence under Title 28, United States Code, Section 2255, or any other collateral attack; and (5) any right to file a motion for modification of sentence, including under Title 18, United States Code, Section 3582(c).  The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging his/her conviction or sentence in this case.  If the defendant files a notice of appeal or a habeas petition, notwithstanding this agreement, defendant agrees that this case shall, upon motion of the government, be remanded to the district court to determine whether defendant is in breach of this agreement and, if so, to permit the government to withdraw from the plea agreement. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

1

Reinstitution of Prosecution

2    16.    Nothing in this agreement shall be construed to protect the defendant in any
3 way from prosecution for perjury, false declaration or false statement, or any other offense
4 committed by the defendant after the date of this agreement.  In addition, if the defendant
5 commits any criminal offense between the date of this agreement and the date of
6 sentencing, the government will have the right to withdraw from this agreement.  Any
7 information, statements, documents and evidence which the defendant provides to the
8 United States pursuant to this agreement may be used against the defendant in all such
9 proceedings.

10    If the defendant's guilty plea is rejected, withdrawn, vacated, or reversed by any
11 court in a later proceeding, the government will be free to prosecute the defendant for all
12 charges as to which it has knowledge, and any charges that were dismissed because of this
13 plea agreement will be automatically reinstated.  In such event, the defendant waives any
14 objections, motions, or defenses based upon the Speedy Trial Act or the Sixth Amendment
15 to the Constitution as to the delay occasioned by the later proceedings.  Defendant agrees
16 that the stipulated sentencing ranges set forth under "Agreements Regarding Sentence" will
17 not be offered if prosecution is re-instituted.

18

Plea Addendum

19    17.    This written plea agreement, and any written addenda filed as attachments to
20 this plea agreement, contain all the terms and conditions of the plea. Any additional
21 agreements, if any such agreements exist, shall be recorded in a separate document and
22 may be filed with the Court under seal. Accordingly, additional agreements, if any, may
23 not be in the public record.

24

25

WAIVER OF DEFENDANT'S RIGHTS AND FACTUAL BASIS

26

Waiver of Rights

27    I have read each of the provisions of the entire plea agreement with the assistance
28 of counsel and understand its provisions.  I have discussed the case and my constitutional

- 6 -

and other rights with my attorney. I understand that by entering my plea of guilty I will be giving up my right to plead not guilty; to trial by jury; to confront, cross-examine, and compel the attendance of witnesses; to present evidence in my defense; to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination; all with the assistance of counsel; to be presumed innocent until proven guilty beyond a reasonable doubt; and to appeal.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charge to which I am entering my guilty plea. I have been advised by my attorney of the nature and range of the possible sentence, and that I will not be able to withdraw my guilty plea if I am dissatisfied with the sentence the court imposes.

My guilty plea is not the result of force, threats, assurances or promises other than the promises contained in this agreement. I agree to the provisions of this agreement as a voluntary act on my part, rather than at the direction of or because of the recommendation of any other person, and I agree to be bound according to its provisions. I agree that any Sentencing Guidelines range referred to herein or discussed with my attorney is not binding on the Court and is merely an estimate.

I agree that this written plea agreement contains all the terms and conditions of my plea and that promises made by anyone (including my attorney) that are not contained within this written plea agreement are without force and effect and are null and void.

I am satisfied that my defense attorney has represented me in a competent manner.

I am not now on or under the influence of any drug, medication, liquor, or other intoxicant or depressant, which would impair my ability to fully understand the terms and conditions of this plea agreement.

/ / /

- 7 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>Factual Basis and Relevant Conduct</u>

I further agree that the following facts accurately describe my conduct in connection with the offense to which I am pleading guilty and that if this matter were to proceed to trial the government could prove the elements of the offense beyond a reasonable doubt:

On May 21, 2018, DEA investigators were conducting surveillance at 17217 West Caribbean Lane in Surprise, Arizona.  Agents observed Shateria Morse depart the residence driving a Dodge Caravan.  Agents followed the Dodge Caravan to a retail parking lot where they observed a woman walk up to the driver's side of the vehicle.  Agents then observed Shateria Morse hand a manila envelope to the woman and exit the parking lot.  The woman who received the envelope entered a black Kia Soul and left the area.

The woman in the Kia drove to a Walmart parking lot.  A man exited the passenger side of the Kia and walked into the Walmart.   The man approached the Walmart pharmacy counter and dropped off two prescriptions.  DEA investigators obtained the two prescriptions and found they list a fictitious patient "Jessica Williams" and provider (Dr. B.B.) with an address at the Del City Medical Center at 2412 W Greenway Rd, Phoenix, Arizona. One prescription was for promethazine with codeine.

After departing the Walmart pharmacy, the man returned to the black Kia and drove to a nearby Safeway.  He walked to the Safeway pharmacy counter and dropped off two additional prescriptions.  DEA investigators obtained the two prescriptions and found they listed patient "Suzanne Williams" and the same provider (DR. B.B.).   One prescription was for promethazine with codeine.

After departing the Safeway pharmacy, the man and woman in the Kia Soul were stopped by Phoenix Police Department (PPD) officers for a traffic violation.  After observing an open container of alcohol in the car, PPD officers had the two step out of the vehicle.  PPD Officers observed something in the waistband of the woman's pants and asked her to remove it.  She removed a padded manila envelope from her waistband.

Inside the manila envelope, officers found 12 prescriptions - six for promethazine with codeine and six for penicillin. All 12 prescriptions list the provider name as Dr. B.B. at the Del City Medical Center at 2412 W Greenway Rd in Phoenix, Arizona - the same provider information listed on the prescriptions dropped off at the Walmart pharmacy and the Safeway pharmacy just minutes before.  This is also the same clinic name and address found on several other forged promethazine with codeine prescriptions previously filled using Dr. B.B.'s name and DEA number.  Agents later confirmed that these prescriptions were forged and were not issued by DR. B.B.

On May 14, 2018, Surprise Police Department conducted a trash pull at Shateria Morse' house.  Several torn prescriptions were recovered that had the physician listed as Dr. B.B. with a Magic Jack phone number that lists Shateria Morse as the subscriber.  All the torn prescriptions were printed on light blue Docuguard security paper.  The paper matches Amazon's online image

of Docuguard Security paper for printing prescriptions which was ordered by Shateria Morse on April 9, 2018 and shipped to her at the W. Caribbean lane address.

On July 12, 2018 a federal search warrant was executed at Shateria Morse' residence. Agents recovered a stack of light blue Docuguard prescription stock paper.  This is the same type of paper ordered by Shateria Morse on April 9, 2018.  Agents also recovered hand-written notes listing names, addressed, phone numbers, and prescription instructions for phenergan with codeine and promethazine with codeine.  Several other forged prescriptions were recovered.  Agents also recovered a blue spiral notebook containing pharmacy names addresses and phone numbers.

Morse procured the doctors' DEA registration numbers, illegally manufactured the fraudulent prescriptions using these DEA registration numbers to obtain the controlled substances and controlled the phone numbers listed for the doctors' offices on these prescriptions so she, or someone else, could pose as the doctor and "verify" the validity of these prescriptions if the pharmacies called to check on them.

Shateria Morse now admits that she conspired to obtain codeine, a Schedule V controlled substance, by fraud, misrepresentation, forgery, deception, and subterfuge; in violation of Title 21, United States Code, Sections 843(a)(3) and 846.

_____                    _____
Date                                                        Shateria Morse
                                                               Defendant

## DEFENSE ATTORNEY'S APPROVAL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Rule 11, Fed. R. Crim. P., the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea, including the defendant's waiver of the right to appeal.  No assurances, promises, or representations have been given to me or to the defendant by the government or by any of its representatives which are not contained in this written agreement.  I concur in the entry of the plea as indicated above and on the terms and conditions set forth in this agreement as in the best interests of my client.  I agree to make a bona fide effort to ensure

that the guilty plea is entered in accordance with all the requirements of Rule 11, Fed. R.

Crim. P.

_____          _____
Date                                                   Thomas Hartzell
                                                       Attorney for Defendant

GOVERNMENT'S APPROVAL

I have reviewed this matter and the plea agreement. I agree on behalf of the United

States that the terms and conditions set forth are appropriate and are in the best interests of

justice.

GLEN B. McCORMICK
Acting United States Attorney
District of Arizona

_____          _____
Date                                                   CRAIG H. RUSSELL
                                                       Assistant U.S. Attorney